UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:
DAVID PARKER,                                                                 Case No. 07-60884 (sdg)
                                                                              (Previous Case No. 04-17988 (rel))

                                    Debtor.
_____

BOARD OF TRUSTEES,
ADIRONDACK CARPENTERS PENSION FUND,
and
BOARD OF TRUSTEES,
CARPENTERS LOCAL 1042/229
HEALTH CARE FUND,
and
BOARD OF TRUSTEES,
LOCAL 229 CARPENTERS JOINT
APPRENTICESHIP TRAINING FUND,

                          Plaintiff(s),

            v.                                                                Adv. Pro. No. 06-90142

DAVID PARKER,
                          Defendant(s).
_____

APPEARANCES:

ANTONUCCI LAW FIRM                                                            David P. Antonucci, Esq.
*Attorneys for Debtor/Defendant*
12 Public Square
Watertown, NY 13601

EDWARD F. CRUMB, ESQ.
*Attorney for Plaintiffs*
P.O.Box 1393
Binghamton, NY 13902-1393

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

       Currently before the court is the adversary complaint filed by the Boards of Trustees of the

Adirondack Carpenters Pension Fund, the Carpenters Local 1042/229 Health Care Fund, and the Local 229

Carpenters Joint Apprenticeship Training Fund (collectively the "Benefit Funds" or "Plaintiff") against David

Parker ("Parker" or "Debtor") seeking a determination that the Debtor be denied a discharge pursuant to 11

U.S.C. § 727[1] or, in the alternative, a declaration that certain debt be excepted from discharge pursuant to § 523(a)(4) and/or (a)(6). The court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(I), and 1334(b).

**FACTS**

Based upon the entire record before the court, including the pleadings and the March 12, 2006 trial, the court makes the following findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052.

1. Parker is an individual residing or doing business in Canton, St. Lawrence County, New York. (Stip. of Facts ¶ 1 (No. 33).)

2. During the period 1999-2002, Parker Deco, Inc. was a business entity duly organized and existing under the laws of the State of New York, having its principal place of business in Canton, St. Lawrence County, New York. (*Id*. ¶ 2.)

3. During the period 1999-2002, Parker was the President, Treasurer, and majority shareholder of Parker Deco. (*Id*. ¶ 3.)

4. On or about June 15, 1999, Parker, as President of Parker Deco, and Upstate New York Regional Council of Carpenters, on behalf of Locals 229 and 1042 (collectively the "Union") and other Carpenters Locals, entered into a Collective Bargaining Agreement (the "CBA") which, among other things, required Parker Deco to make contributions and to pay wage withholdings to the Benefit Funds on behalf of the Union laborers covered by the CBA that it employed. (Trial Tr. 7 - 10, Mar. 12, 2007; Pl.'s Trial Exs. 1 and 2.)

5. Debtor and his wife, Cathy Parker, had signatory authority over Parker Deco's checking account (No. 0104017313) at Community Bank, National Association (the "Community Bank Account"). (Pl.'s Trial Ex. 6.)

6. The Benefit Funds are multi-employer funds. (Trial Tr. 5 - 6.)

7. Each of the Benefit Funds is overseen by a Board of Trustees. (Trial Tr. 14 - 18.)

8. Employers send their contributions to the Benefit Funds, where they are accounted for, and then someone, other then the employers, administers how the funds are invested. (Trial Tr. 25.)

9. Parker Deco employed carpentry laborers supplied by the Union and covered by the CBA in connection with the Lake Placid Price Chopper construction project in Clinton County, New York between December 2000 and March 2001. (Trial Tr. 14.)

10. Parker Deco failed to pay union dues from monies it withheld from the Union employees' wages to the

---

[1] This case was filed prior to October 17, 2005, the effective date fo the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Thus, all references to the Bankruptcy Code are to 11 U.S.C. § § 101-1330 (2004), unless otherwise noted.

Benefit Funds pursuant to the CBA during the period December 2000 through March 2001. (Pl.'s Trial Ex. 3.)

11. Parker Deco failed to make contributions to the Benefit Funds on behalf of the Union employees as dictated by the CBA during the period December 2000 through March 2001. (*Id.*)

12. During the period March 2, 2001 through August 3, 2001, Debtor drew ten checks on behalf of Parker Deco against the Community Bank Account payable to cash, as well as David Parker, individually. (Pl.'s Trial Ex. 7.)

13. During the period September 1, 2000 through October 19, 2001, Debtor drew 23 checks on behalf of Parker Deco against the Community Bank Account payable to Parker Painting Company, Inc. (Pl.'s Trial Ex. 8.)

14. The Benefit Funds retained Joseph McCarthy to perform an audit of Parker Deco's contributions and wage withholdings for the period December 2000 through March 2001. (Trial Tr. 33 - 34; Pl.'s Trial Ex. 3.)

15. The Benefit Funds obtained an Order and Default Judgment, dated December 30, 2003, and entered January 5, 2004, from the United States District Court for the Northern District of New York (No.1:03-CV-0058 (LEK/DRH)) in the amount of $46,509.28 against Parker Deco for unpaid contributions and wage deductions due under the CBA. (Pl.'s Trial Ex. 9 (the "District Court Judgment").)

16. The District Court Judgment is broken down into numerous components which may be summarized as $23,928.28 attributable to employer contributions and wage withholdings, including $3,692.47 in wage withholdings for union dues, plus interest, liquidated damages, audit costs, and attorney's fees and costs. (*Id.*)

17. The District Court Judgment was premised upon the employee benefit funds being ERISA-qualified funds (29 U.S.C. § 1001 *et seq.*). (*Id.*)

18. Neither Parker Deco, nor any other party on its behalf, made any payments to the Benefit Funds with respect to the District Court Judgment. (Stip. of Facts ¶ 6.)

19. On December 16, 2004, Parker filed for bankruptcy protection under chapter 7 of the Bankruptcy Code. The case was subsequently converted to a case under chapter 13 on February 28, 2005. The case was reconverted to chapter 7 on January 17, 2006. (Stip. of Facts ¶ 4.)

20. The Benefit Funds timely filed an adversary complaint on May 12, 2006, seeking a declaration that the debt evidenced by the District Court Judgment is nondischargeable pursuant to § 523(a)(4) and/or (a)(6) or, alternatively, the Debtor should be denied a discharge under § 727. (No. 1.)

21. The Debtor filed an answer to the adversary complaint on June 9, 2006. (No. 6.)

22. A trial was conducted on March 12, 2007.

23. At trial, Plaintiff produced two witnesses: Vicki J. Bulman, Fund Manager of the Benefit Funds (Trial Tr. 5 - 31), and Joseph E. McCarthy, an accountant employed by the Benefit Funds (Trial Tr. 33 - 37).

24. The Debtor did not testify at trial.

25. At the conclusion of the trial, counsel for the Benefit Funds moved to amend the pleadings to conform to the evidence, and the §§ 523(a)(6) and 727 causes of action were withdrawn by the Plaintiff. (Trial Tr. 44 - 45.)

## ARGUMENTS[2]

Without citations to the record, the Benefit Funds assert that Parker, as President, Treasurer and majority shareholder of Parker Deco, exercised control over Parker Deco's financial operations and discretion as to which corporate obligations to pay. Additionally, Plaintiff claims that, given Parker's status within Parker Deco, he was obligated to contribute to the Benefit Funds and remit union dues on behalf of the Union workers it employed under the CBA. In its post-trial submission, the Benefit Funds argue that the employer contributions and wage withholdings Debtor failed to pay are "plan assets," and they became "plan assets" at the time the Debtor was obligated to remit them to the Benefit Funds. The Benefit Funds' position is that Parker is a fiduciary under 29 U.S.C. § 1002(21)(A), because he exercised authority and discretion over the disposition of the contributions and withholdings after they became due under the CBA. By choosing to pay himself and other business obligations instead of making the contributions as required under the CBA, the Benefit Funds argue Parker committed defalcation while acting in a fiduciary capacity with respect to the contributions. As to the wage withholdings for union dues, the Benefit Funds assert the Debtor embezzled, stole, and/or converted these monies by withholding them from the gross pay of the Union employees and

---

[2] In a bizarre denouement to the dischargeability trial, counsel for Plaintiff agreed to submit his post-trial memorandum three weeks after he received the trial transcript. On April 20, 2007, counsel wrote to the court indicating that, based on his receipt of the transcript, his brief was due on April 23, 2007. He requested a three day extension to April 26, 2007. On April 23 2007, Plaintiff's counsel again communicated with the court to advise that Defendant's counsel consented to his request. The Defendant timely filed his post-trial brief on May 10, 2007. Plaintiff's brief was finally submitted on May 22, 2007, with the following preamble:
> Plaintiffs had sought an extension for filing their post-trial brief, but the court did not act to grant such extension. Accordingly, this post-trial submission as a reply brief contains argument that would have been submitted in the prior brief had the court granted the extensions requested.

(Pl.'s Mem. of Law 1 (No. 40).)
Notwithstanding the thinly veiled effort of submitting late papers, in the interests of judicial economy and giving finality to the litigation, the court will receive all papers offered and concentrate on the legal questions presented.

not remitting them to the Benefit Funds.

Based on the foregoing, it is the Benefit Funds' position that the debt evidenced by the District Court Judgment should be deemed nondischargeable pursuant to § 523(a)(4).[3] Plaintiff also claims that based on 29 U.S.C.§ 1109(a), Parker's personal liability extends to auditor's fees and attorney's fees, and these fees should be deemed nondischargeable as well. Furthermore, the Benefit Funds assert that if the court renders a judgment in their favor, the court is required to award reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(2)(D).

In reliance on *In re Holman*, 325 B.R. 569 (E.D. Ky. 2005), the Debtor counters by stating that for the Benefit Funds to be successful under § 523(a)(4) they must establish (1) the existence of an express trust, (2) the debt in question was the result of fraud or defalcation, and (3) the Debtor was acting as a fiduciary at the time. The Debtor asserts the Benefit Funds have failed to meet this burden in that the only thing proved at trial was that benefits were owing and unpaid. The Debtor cites *In re Luna*, 406 F.3d 1192 (10th Cir. 2005), to support his position that his relationship with the Benefit Funds was of a contractual nature and not a fiduciary relationship. In addition, the Debtor argues that because the Benefit Funds withdrew their §§ 523(a)(6) and 727 causes of action at trial, the Debtor should be awarded attorney fees.

## DISCUSSION

Plaintiff bears the burden of proving its debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are strictly construed in favor of the debtor. *Id.* at 286. This comports with the "fresh start" purpose that underlies the Bankruptcy Code.

### The Employer's Contributions

---

[3] The Benefit Funds argue in Point III of their post-trial memorandum of law that the evidence at trial establishes that the District Court Judgment is nondischargeable under § 523(a)(6), and in Point IV they assert the evidence supports denying the Defendant a discharge under § 727(a)(5). The Benefit Funds' §§ 523(a)(6) and 727 causes of action, however, were withdrawn at the conclusion of trial and will not be considered by the court.

The issue presented is whether a debt an employer owes for failing to contribute to employee benefit funds under a collective bargaining agreement is nondischargeable. More specifically, after trial, we are left with allegations that the contributions Debtor failed to pay to the Benefit Funds are nondischargeable based upon Parker's defalcation while acting in a fiduciary capacity pursuant to § 523(a)(4). In order for the court to conclude the unpaid employer contributions fall within this discharge exception, Plaintiff must prove three elements:

> First, the debt must result from a fiduciary's defalcation under an "express or technical trust" involving the entrusting of money or other property to a fiduciary for the benefit of another. Second, the debtor must have acted in a fiduciary capacity with respect to the trust. Third, the transaction in question must be a "defalcation" within the meaning of bankruptcy law.

*Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005) (citations omitted).

### *(1) Express or Technical Trust*

To fall within the defalcation exception there must be an express or technical trust; it does not apply to constructive or implied trusts, or trusts implied on the basis of wrongful conduct. *In re Duncan*, 331 B.R. at 78 (citations omitted). A mere contractual relationship is not enough to establish the existence of a fiduciary relationship. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993). An express trust "is initiated by one entity's transfer of property to another entity coupled with a manifestation of an intention to create a trust." *In re Suarez*, 367 B.R. 332, 351 (Bankr. E.D.N.Y. 2007) (citations omitted). Section 523(a)(4) is not limited to trusts arising under formal trust agreements, or trusts expressly imposed by statute. Courts have extended § 523(a)(4) to "relationships in which 'technical trust type' obligations are imposed pursuant to state or common law." *Id.* at 352 (citations omitted). Bankruptcy courts have found ERISA-covered employee benefit plans to satisfy the elements of a technical trust under § 523(a)(4). *In re Duncan*, 331 B.R. at 78 (collecting cases). The court adopts the reasoning of these courts and finds that the ERISA employee benefit plans before it are trusts for § 523(a)(4) purposes and, thus, the first prong of the defalcation exception is met as regards to the employer contributions.

### *(2) Acting in a Fiduciary Capacity*

6

The meaning of fiduciary is a matter of federal law. *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998) (citation omitted). Similarly, federal law determines the meaning of the term "fiduciary capacity" for purpose of § 523(a)(4). *In re Casey*, 181 B.R. 763, 766 (Bankr. S.D.N.Y. 1995). Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he . . . exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . , or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). This definition is premised "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993) (emphasis in original). The Second Circuit has noted that Congress intended the term fiduciary under ERISA to be broadly construed. "'[T]he definition includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title.'" *Blatt v. Marshall*, 812 F.2d 810, 812 (2d Cir. 1987) (citation omitted) (finding defendants were ERISA fiduciaries under a functional definition because they exercised actual control over plan assets); s*ee In re Halpin*, 370 B.R. 45 (N.D.N.Y. 2007).

There is nothing in the record for the court to find Debtor had discretion regarding plan management or administration, or that he rendered investment advise. In addition, the Debtor was not a member of any of the Benefit Funds' Board of Trustees. The Debtor may, however, have had authority or control over plan assets if the employer contributions are considered as such. Accordingly, in determining whether Defendant is an ERISA fiduciary, the court must concurrently determine if the contributions became plan assets at the time they were contractually due under the CBA.

"Traditionally, the 'proper rule, developed by caselaw [sic], is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.'" *In re Bucci*, 493 F.3d 635, 642 (6th Cir. 2007) (quoting *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003); *see Trs. of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors,* 478 F.Supp.2d 279, 283 (D.Conn. 2007) (citing *Trs. of S. Cal. Pipe Trades Health and Welfare*

*Trust Fund v. Temecula Mech., Inc.*, 438 F.Supp.2d 1156, 1163 (C.D.Cal. 2006) for the "general rule that contributions do not become plan assets until paid to the plan" unless otherwise established in plan documents); *see also United States v. Panepinto*, 818 F.Supp. 48, 50-51 (E.D.N.Y. 1993) (holding that under the wage agreements, the employer has no legal interest in unpaid employer contributions to an ERISA fund and, thus, those unpaid contributions were "plan assets"). There is no language in the portion of the CBA in the record in this case that supports a finding that the employer's delinquent contributions are plan assets. Instead, the provisions of the CBA suggest that the unpaid contributions are contractual payment obligations. Article 20 of the CBA, captioned "Hourly Wage and Fringe Schedule - By County," provides a schedule of the amounts an employer is required to contribute to the Benefit Funds on behalf of the Union workers covered by the CBA. The CBA does not explicitly state when such contributions become fund assets. (Pl.'s Trial Ex. 2 at 9 - 10.) Article 13 of the CBA's Appendix for Clinton, Essex, and Franklin Counties, entitled "Fringe Benefits," provides a contractual obligation on the part of the employer to contribute to the various funds, but does not address or even contemplate unpaid employer contributions becoming plan assets. (Pl.'s Trial Ex. 2 at 112 - 13.)

Plaintiff argues the unpaid employer contributions became plan assets when contractually due. The cases relied upon by the Plaintiff in support of its position, however, are easily distinguishable. In *Catucci,* the agreement in question specifically provided that assets of the fund consisted of:

> 'money received from or owing from any other person, corporation, or Fund required to make contributions or payments to this Fund . . . .' This language makes clear that the monies constituting the Fund include 'money . . . owing from any . . . corporation . . . required to make payments to this Fund.' Salco's debt to the Fund, as money owed to the Fund by a corporation required to make payments to the fund, therefore is a Fund "asset." Courts consistently hold that a company's unpaid debt to an ERISA fund is an "asset" of that fund when the applicable agreement declares such debts to be fund assets.

*NYSA-ILA Med. & Clinical Servs. Fund v. Catucci,* 60 F. Supp 2d 194, 200-01 (S.D.N.Y. 1999) (citation omitted).

Like *Catucci,* the wage agreement in *Connors v. Paybra Mining Co.,* 807 F.Supp. 1242 (S.D.W.Va. 1992), specifically provided for all due and owing contributions to vest in the trustees of the employee benefit

8

plans. *United States v. Glick*, 142 F.3d 520 (2d Cir. 1998), *LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997), and *Hoyt v. Modern Millwork & Design, Inc.*, No. 3:97 CV01804 JCH, 2000 WL 626903 (D.Conn. Mar. 27, 2000), all discuss employee contributions, rather than employer contributions. Likewise, *Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995), did not involve unpaid employer contributions, but an alleged fiduciary's withdrawal of monies from a company's pension fund to prevent the company's financial ruin. The Plaintiff has not cited any authority for the proposition that unpaid employee contributions to an ERISA plan are "plan assets" in the absence of language in an agreement supporting this conclusion.

Based upon the record before it, the court concludes the CBA does not support Plaintiff's theory that unpaid employer contributions become plan assets when they are contractually due. If the unpaid contributions do not constitute plan assets, the Debtor cannot be found to have exercised authority or control over plan assets. As such, the court finds the Defendant is not a fiduciary within the definition of 29 U.S.C. § 1002(21)(A).[4]

Based upon the foregoing, the court cannot make a finding that the Debtor had the requisite fiduciary capacity required to except a debt from for defalcation.[5] As a result, the Plaintiff has failed to prove by a preponderance of the evidence that it suffered a loss due to Plaintiff's defalcation while acting in a fiduciary capacity under § 523(a)(4).

### The Employee's Withholdings

Plaintiff's second claim for relief asserts that the monies for union dues deducted from the employees' wages are nondischargeable because Parker committed embezzlement, conversion, and/or

---

[4] Courts are split on the question of whether a determination that an individual is a fiduciary for ERISA purposes is sufficient to satisfy the fiduciary capacity requirement of § 523(a)(4). *See In re Mayo*, No. 04-1067, 2007 WL 2713064, at * 8 (Bankr. D. Vt. Sept. 17, 2007) (collecting cases). The Second Circuit has not yet answered this question. Having found Parker was not a fiduciary under ERISA, the court need not weigh in on this issue.

[5] As a determination has been made that the Debtor was not a fiduciary, the court need not address the third element of a nondischargeability action based upon defalcation under § 523(a)(4), namely, whether the debt arose from a "defalcation."

larceny by not turning over those earmarked funds to the Benefit Funds. Debts resulting from the fraudulent appropriation of another's property are excepted from discharge under § 523(a)(4), whether the appropriation was unlawful at the outset, and therefore a larceny, or whether there was an unlawful appropriation after the property was entrusted to the debtor's care, and therefore an embezzlement. 4 L. King, COLLIER ON BANKRUPTCY ¶ 523.10 [2], at 523-77 (15th ed. rev. 1998). What constitutes larceny or embezzlement under § 523(a)(4) is a matter of federal law. *In re Scheller*, 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (citations omitted).

*(1) Larceny*

Larceny under § 523(a)(4) is the "'fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner.'" *In re Balzano*, 127 B.R. 524, 532 (Bankr. E.D.N.Y. 1991) (citation omitted). Here the initial element of larceny is missing. As the Debtor lawfully took possession of the wage withholdings as an employer, the court finds the Debtor did not commit larceny for purposes of the discharge exception of § 523(a)(4).

*(2) Embezzlement*

The elements of a claim based on embezzlement within § 523(a)(4) include: (1) property owned by another is rightfully in the possession of debtor; (2) debtor's appropriation of such property to a use other than the use of which the property was entrusted to debtor; and (3) circumstances indicating fraudulent intent. *In re Wong,* 291 BR. 266, 279 (Bankr. S.D.N.Y. 2003) (citations omitted). Absent intent to defraud, a debtor's appropriation of funds does not rise to the level of embezzlement. *In re Bevilacqua*, 53 B.R. 331, 334 (Bankr. S.D.N.Y. 1985) (citation omitted). The problem Plaintiff faces is with the third element. The record is sparse, if not nonexistent, with respect to any indica of "intent" on the part of the Debtor. Plaintiff called only two witnesses: Ms. Bulman and Mr. McCarthy. Ms. Bulman, the Plaintiff's fund manager, testified regarding the organizational backdrop of the Plaintiff, and Mr. McCarthy, an auditor, testified that money was owed to Plaintiff by the Debtor. Neither witness provided any insight into the Debtor's state of mind or

10

his actions, nor was any circumstantial evidence from which the court can infer fraudulent intent presented. As the Plaintiff did not call the Debtor to testify, the court can make no findings regarding credibility. Thus, we do not know what reasoning, if any, the Debtor had for his actions, and the court cannot conclude that the Debtor committed embezzlement.

Based upon the foregoing, Plaintiff has failed to establish by a preponderance of the evidence the necessary elements to render any debt owed to it nondischargeable under § 523(a)(4), as a debt for embezzlement or larceny.

*(3) Conversion*

Plaintiff cites no authority for its proposition that a debt resulting from a debtor's conversion of property is nondischargeable under the exception to discharge contained within § 523(a)(4). A debt arising from an unlawful conversion of property of another is not specified as nondischargeable in § 523(a) because typically a "willful and malicious injury" under § 523(a)(6) would cover a "willful and malicious conversion." 4 L. King, COLLIER ON BANKRUPTCY ¶ 523.12 [2], at 523-92.2 (15th ed. rev. 1998). Under New York law, an action for conversion of money will lie where there is an obligation to return or otherwise treat in a particular manner the specific money in question. *LoPresti v. Terwilliger*, 126 F.3d at 41 (citation omitted). "'The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another.'" *Id*. at 42 (quoting *Fashions Outlet of America, Inc. v. Maharaj*, 88 Civ. 7231, 1991 WL 143421, at *2 (S.D.N.Y. July 22, 1991). Thus, in some instances, but not all, conversion may constitute a willful and malicious injury. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). As Plaintiff withdrew its § 523(a)(6) causes of action at the conclusion of trial based upon the evidence before the court, there is no exception to discharge based upon conversion under § 523(a)(6) before it.

## Attorney's Fees

Both parties requested reasonable attorney's fees and costs associated with this adversary proceeding.

Deviation from the American Rule that each side bears the expense of its attorney's fees requires either a statutory or contractual basis. Debtor's counsel requests attorney fees because "the Defendant was compelled to defend numerous causes of actions which were suddenly withdrawn at trial." (Debtor's Ltr. Br. 2 (No. 39).) Debtor does not support his request with case law or a specific statutory reference. The Plaintiff cites to both the CBA and 29 U.S.C. § 1132(g)(2)(D) to substantiate its requests for attorney's fees and costs.

While it is true that Plaintiff's trial strategy precluded any findings based on intent and caused the §§ 727 and 523(a)(6) allegations to be withdrawn at the conclusion of the trial, Debtor necessarily had to prepare for the § 523(a)(4) causes of action. If Plaintiff had been successful in this dischargeability proceeding, perhaps Plaintiff could have made an argument that its attorney's fees and costs should also have been deemed nondischargeable, s*ee Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (punitive damages and attorney's fees allowed under statute which debtor was found to have committed fraud were also deemed nondischargeable under § 523(a)(2)), but Plaintiff was not successful. Based on the record before it, the court sees no reason to stray from the American Rule that each litigant pay its own attorney's fees.

## CONCLUSION

In summary, Plaintiff's first and second causes of action are dismissed for Plaintiff's failure to carry it's burden,[6] and Plaintiff's third cause of action is deemed withdrawn. Accordingly, the complaint is dismissed in its entirety, and both parties' requests for attorney's fees are denied.

It is so ORDERED.

Dated: 5/7/08     /s/ Robert E. Littlefield, Jr.
Albany, New York     _____
                    Hon. Robert E. Littlefield, Jr.
                    United States Bankruptcy Judge

---

[6]Inexplicably, the Plaintiff, for whatever reason, did not allege a defalcation while acting in a fiduciary capacity with respect to the employee withholdings for union dues. While Plaintiff did move to amend the pleadings to conform to the proof post-trial, that was done specifically to withdraw certain causes of action, rather than to add causes of action.